# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSÉ A. WISCOVITCH BARRERAS, et al.,

    Plaintiffs,

         v.                       CIVIL NO.: 18-1029 (MEL)

CARMEN YULÍN CRUZ SOTO, et al.,

    Defendants.

## REPORT & RECOMMENDATION

Mr. José Wiscovitch Barreras ("Mr. Wiscovitch"), Rosario Castañeda Casanova ("Ms. Castañeda"), the Conjugal Partnership formed between Mr. Wiscovitch and Ms. Castañeda, Claudia Wiscovitch, and Victoria Wiscovitch (collectively "Plaintiffs") filed an amended complaint against Carmen Yulín Cruz Soto, former Mayor of San Juan ("Mayor Cruz"), in her individual capacity, and against the Municipality of San Juan ("the Municipality") (collectively "Defendants"). ECF No. 14.[1] Mr. Wiscovitch brings suit pursuant to the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants violated his rights secured under the First, Fourth, and Fourteenth Amendments of the United States Constitution. ECF No. 14 at 2. Mr. Wiscovitch also seek injunctive relief against enforcing an administrative fine imposed on him which he alleges violated protections to his commercial speech secured under the First Amendment of the United States Constitution. ECF No. 14 at 8–9. Finally, Mr. Wiscovitch

---

[1] Plaintiffs' amended complaint also brought suit against Mayor Cruz and Municipality of San Juan Police Officers Samuel Pérez Barreto and Rafael González López in their official capacities. ECF No. 14. The court dismissed with prejudice the claims against Pérez and González because a suit against a public official in their official capacity should be treated as a suit against the municipal entity. ECF No. 37; ECF No. 38. For the same reason, the suit against Mayor Cruz in her official capacity must be dismissed because such a suit must be construed as a suit against the Municipality of San Juan. Suprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) ("A suit against a public official in his official capacity is a suit against the governmental entity itself.").

brings supplemental causes of action based in Article I Section 10 and Article II Sections 1, 8, 10,[2] and 16 of the Puerto Rico Constitution, and all Plaintiffs sue to recover for emotional harm under Puerto Rico Civil Code Section 1802. ECF No. 14 at 9–11.

Pending before the court are Defendants Mayor Cruz and the Municipality of San Juan's motions for summary judgment. ECF Nos. 105, 107. Defendants filed a joint statement of undisputed material fact in support of their individual motions for summary judgment. ECF No. 106. Plaintiffs responded in opposition to both motions for summary judgment on September 7, 2021, with a single accompanying response statement of material fact. ECF Nos. 134, 135, 136. Defendants were granted leave to file and subsequently filed individual reply motions and a single joint reply statement of material fact. ECF Nos. 144, 145, 147.

## I.    LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the

---

[2] In the complaint and in response to Defendants' motions, Plaintiffs erroneously cite "Article I, § 10 of the Constitution of Puerto." ECF No. 14 at 10, ¶ 51; See e.g., ECF No. 135 at 24. However, Article I of the Puerto Rico Constitution only contains four sections. See P.R. CONST. art. I. Plaintiffs refer to the provision of the Puerto Rico Constitution which "protects against unreasonable searches and seizures." ECF No. 14 at 10, ¶ 51. Therefore, Plaintiffs clearly intend to cite Article II, § 10 of the Puerto Rico Constitution. P.R. CONST. art. II, § 10 ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.")

litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting

Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

     The party moving for summary judgment bears the burden of showing the absence of a

genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the

movant presents a properly focused motion "averring 'an absence of evidence to support the

nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of

at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d

112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).

For issues where the nonmoving party bears the ultimate burden of proof, the party cannot

merely "rely on an absence of competent evidence, but must affirmatively point to specific facts

[in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw.

Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however,

"rely only on uncontradicted evidence . . . . So long as the [party]'s evidence is both cognizable

and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to

determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of

Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

     In assessing a motion for summary judgment, the court "must view the entire record in

the light most hospitable to the party opposing summary judgment, indulging all reasonable

inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility

determinations, no room for the measured weighing of conflicting evidence such as the trial

process entails, [and] no room for the judge to superimpose his own ideas of probability and

likelihood." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The

court may, however, safely ignore "conclusory allegations, improbable inferences, and

unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## II.    MR. WISCOVITCH'S UNSWORN DECLARATION IN SUPPORT OF HIS OPPOSITIONS TO MOTIONS FOR SUMMARY JUDGMENT

In support of Plaintiffs' motion in opposition to Defendants' motions for summary judgment, Plaintiffs submitted Mr. Wiscovitch's unsworn declaration made under penalty of perjury. ECF No. 134-1. Defendants move to strike Mr. Wiscovitch's statement alleging that it is a "sham affidavit" created for the sole purpose of creating material issues of fact to survive summary judgment. ECF No. 147 at 2–4; ECF No. 145 at 4–7.

A party is permitted to submit an affidavit in opposition to a motion for summary judgment so long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Simply because an affidavit contains self-serving statements is not a basis to discredit an affidavit alone. Malavé-Torres v. Cusido, 919 F. Supp. 2d 198, 205 (D.P.R. 2013) (indeed, "[m]ost affidavits are self-serving, as is most testimony . . .") (internal citations omitted). Some portions of an affidavit may meet the requirements set forth in Rule 56, while others may not. Pérez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001). As such, Rule 56 operates as a "scalpel, not a butcher knife" and the court will disregard only the portions of the affidavit that are inadequate while considering the rest. Id. at 315 (citing Akin v. Q–L Inv., Inc., 959 F.2d 521, 531 (5th Cir.1992)).

But "where a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony has changed.'" Escribano-Reyes v. Pro. HEPA Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (quoting

Hernández–Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000)). In determining whether the affidavit constitutes an attempt to manufacture an issue of fact to defeat summary judgment, the court may consider the party's explanation for any discrepancies as well as the timing of the affidavit. Malave-Torres, 919 F. Supp. 2d at 203; Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006) ("[T]he Statement was executed only after [the defendant] had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment . . .").

Here, Defendants argue that Mr. Wiscovitch's unsworn declaration fabricates disputed facts when none exist, contradicts Mr. Wiscovitch's deposition testimony, and otherwise contains hearsay and irrelevant statements. ECF No. 147 at 2-4, 6; ECF No. 145 at 4–7. The timing of Mr. Wiscovitch's unsworn declaration does appear suspect. The unsworn declaration is dated "the 6th day of September 2021"—one day before Plaintiffs filed their response in opposition to Defendants' motions for summary judgment. ECF No. 134-1 at 2. Nevertheless, the contents of the unsworn declaration are not clearly contradictory to any of the testimony Mr. Wiscovitch gave in his prior deposition. Mr. Wiscovitch's unsworn declaration under penalty of perjury contains eighteen individual statements. ECF No. 134-1. The Municipality asserts a litany of proposed facts that Plaintiffs oppose using "only" the "sham affidavit." ECF No. 145 at 5. However, a close examination of the facts shows that Plaintiff used sources other than the unsworn declaration—including Mr. Wiscovitch's deposition testimony—to contest all but one of Defendants' material, admissible, proposed facts that the Municipality identifies.[3]

---

[3] Specifically, the Municipality of San Juan asserts that Defendants' proposed facts 12, 14, 15, 16, 19, 23, 28, 29, 30, 35, 37, 38, 40, 41, 44, 45, and 50 were only opposed using Mr. Wiscovitch's unsworn declaration. This is not accurate. Plaintiffs cite to other evidence in addition to Mr. Wiscovitch's unsworn declaration in challenging Defendants' proposed facts 12, 14, 15, 28, 29, 30, 35, 37, 38, 40, 41, and 50. Defendants' proposed fact 23 is only

Despite its late timing, at most Plaintiffs used Mr. Wiscovitch's unsworn declaration to bolster other evidence already in the record.

Likewise, Defendants fail to identify which specific statements contradict Mr. Wiscovitch's prior testimony, which statements are irrelevant, or which constitute hearsay. In contrast, Mr. Wiscovitch's unsworn declaration is wholly written on the basis of statements originating from his personal knowledge on the date of the incident in question, and he describes specific conversations with specific people at specific times. Upon reviewing Mr. Wiscovitch's deposition testimony and the unsworn declaration, nothing suggests that the facts contained in the unsworn declaration are contradictory to his sworn testimony. Mr. Wiscovitch's unsworn declaration is therefore sufficiently specific, based in his personal knowledge, and is not contradictory. While the timing of Mr. Wiscovitch's unsworn declaration gives reason to pause, the substance of the unsworn declaration alongside other evidence in the record shows that it is not a sham affidavit and can be properly considered for summary judgment purposes. See Pérez, 247 F.3d at 316.

## III.    FACTS NOT IN CONTROVERSY

Las Fiestas de la Calle San Sebastián ("Las Fiestas") is an annual festival held in Old San Juan, Puerto Rico, and planned and administered by the Municipality of San Juan. ECF No. 106-

---

disputed with the unsworn declaration to the extent that the proposed fact characterizes Mr. Wiscovitch's quadricycle as a vehicle. Similarly, proposed fact 19 is only disputed using the unsworn declaration to the extent that proposed fact 19 characterizes Mr. Wiscovitch's quadricycle as a vehicle and that the sign he was carrying was a "promotional sign." The core of fact 19 is undisputed. While Plaintiffs only cite to the unsworn declaration to contest Defendants' proposed fact 16, a disputed version of that event is clearly described using other evidence besides the unsworn declaration in Plaintiffs' response statement of material facts. ECF No. 134 at 23, ¶ 32. It appears that the Plaintiffs solely relied on the unsworn declaration to dispute Defendants' proposed facts 44 and 45—whether Mr. Wiscovitch ever declared at some point that the officers "would have to arrest him." ECF No. 106-1 at 52, ¶ 21; ECF No. 106-2 at 60, ¶¶ 15–17; ECF No. 134-1 at 1, ¶ 8. On this point, however, Mr. Wiscovitch's unsworn declaration is not inconsistent. Defendants have not cited any question either in Mr. Wiscovitch's deposition, in interrogatories, or in a request for admissions where Mr. Wiscovitch was asked whether he ever declared "You are going to have to arrest me" or where Mr. Wiscovitch explicitly admitted making such a statement.

1 at 18, ¶¶ 1–10; ECF No. 134 at 2, ¶ 3. Las Fiestas draw between 500,000 and 700,000 people to the Old San Juan area during the festival. ECF No. 106-1 at 18, ¶¶ 9–11; ECF No 134 at 2, ¶ 4. As part of planning Las Fiestas, the Mayor and Municipality of San Juan create policies which seek to address security, hours for music and entertainment, business operating hours, merchandise delivery, emergency management systems, and the transportation of residents, tourists, and disabled persons to Old San Juan during Las Fiestas. ECF No. 106-1 at 21, ¶¶ 16–25; 22, ¶¶ 1–25; 23, ¶¶ 1–5, 11–25; 24, ¶¶ 1-6; ECF No. 134-5 at 22, ¶¶ 9–11. From January 2013 to December 2020, Mayor Cruz served as mayor of the Municipality of San Juan. ECF No. 106-1 at 1, ¶ 1; ECF No. 134 at 1, ¶1; 20, ¶ 11; ECF No. 144 at 2, ¶ 11.[4] In 2017, the year of the incident in question, Las Fiestas were celebrated from January 19 to January 22. ECF No. 106-1 at 22, ¶¶ 9–11; ECF No. 134-5 at 22, ¶¶ 9–11. During that year, Municipal Ordinance 33, Series 2016-2017 was in effect, of which Section 14 prohibits the distribution of promotional materials during Las Fiestas without prior written authorization from the San Juan Permits Office and carries a $5,000 penalty for violations. ECF No. 116-2; ECF No. 134 at 19, ¶ 63. Concurrently, Article 12.002 of Municipal Ordinance 8, Series 2002-2003 regulates bicycles on public roads. ECF No. 106-13; ECF No. 134-12 at 3, ¶ 4.

Mr. Wiscovitch is an experienced attorney and well-known resident of Old San Juan. ECF No. 106-2 at 4; ECF No. 144 at 2, ¶ 5. Mr. Wiscovitch is married to Ms. Castañeda. ECF No. 134-6 at 64, ¶¶ 24–25; ECF No. 134-3 at 23, ¶ 20; ECF No. 144 at 9, ¶ 67. The couple has two daughters, Claudia Wiscovitch and Victoria Wiscovitch. ECF No. 134 at 20, ¶ 6; ECF No. 144 at 2, ¶ 6. In 2017, the Wiscovitch family operated a restaurant in Old San Juan, called Asiana Sushi Bar, which commenced operations in 2016. ECF No. 134-2 at 21, ¶¶ 5–9; ECF No. 144 at

---

[4] The court takes judicial notice of this fact pursuant to Fed. R. Evid. 201(b)(1).

2, ¶ 12; 3, ¶ 21. Asiana Food and Beverage, Inc. was incorporated by Ms. Castañeda on October 8, 2015. ECF No. 106-10; ECF No. 134 at 18, ¶ 60. Mr. Wiscovitch worked at Asiana Sushi Bar. ECF No. 134-2 at 57, ¶ 16; ECF No. 144 at 3, ¶ 22.

During Las Fiestas on January 21, 2017, Mr. Wiscovitch was traveling through Old San Juan on his quadricycle. ECF No. 106-3 at 63, ¶¶ 20–21; ECF No 134 at 3, ¶ 8. More specifically, he was traveling on a four-wheeler that measures 8 feet long by two-to-three feet wide, can seat up to four passengers, and is not propelled by an engine. ECF No. 106-3 at 56, ¶¶ 6–24; ECF No. 109-9; ECF No. 134–2 at 56, ¶¶ 6–24; ECF No. 134-4 at 57, ¶ 4; ECF No. 144 at 3, ¶ 14. Mr. Wiscovitch purchased the quadricycle for personal use and to make food deliveries for Asiana Sushi Bar in Old San Juan. ECF No. 134-2 at 58, ¶¶ 4–16.

At about 1:00 pm on January 21, 2017, Municipal police officers allowed Mr. Wiscovitch to enter San Francisco Street through a police checkpoint while riding his quadricycle. ECF No. 134-2 at 62, ¶¶ 24–25; 63, ¶¶ 1–2, 4–5; ECF No. 134-12 at 3, ¶ 4; ECF No. 144 at 4, ¶ 26. At that time, thousands of people were coming through the streets for Las Fiestas. ECF No. 134-2 at 68, ¶¶ 7–9; ECF No. 134-5 at 51, ¶¶ 16–17; ECF No. 144 at 6, ¶ 38.

One of the many people on San Francisco Street was Mayor Cruz, accompanied by her security detail. ECF No. 106-1 at 48, ¶ 7–9; ECF No. 134–5 at 48, ¶ 7–9. Agent Andy Vélez, a member of Mayor Cruz's security detail, saw Mr. Wiscovitch riding the quadricycle and saw that he was carrying a sign. ECF No. 106-5 at 12, ¶¶ 10–12; ECF No. 134 at 5, ¶ 19; ECF No. 134-2 at 108, ¶¶ 1–3; ECF No. 144 at 4, ¶ 27. The sign on the quadricycle was for Asiana Sushi Bar. ECF No. 106-3 at 107, ¶¶ 15–21. Mr. Wiscovitch did not get a permit to have an advertisement for Asiana Sushi Bar during Las Fiestas. ECF No. 106-3 at 107, ¶¶ 15–21; ECF No. 134 at 6, ¶

19. Mr. Wiscovitch also was not wearing a helmet while riding his quadricycle. ECF No. 106-2 at 61, ¶¶ 23–25; 66, ¶¶ 2–7; ECF No. 134 at 9, ¶ 26.

The details about what precisely happened next are in controversy, except that the parties agree that Mayor Cruz also saw Mr. Wiscovitch riding his quadricycle down San Francisco Street and that she or someone in her security detail managed to stop Mr. Wiscovitch. ECF No. 106-1 at 47, ¶¶ 21–25; 48, ¶ 1; ECF No. 134-2 at 64, ¶¶ 19–23. The parties agree that there then occurred a verbal exchange between Mr. Wiscovitch and Mayor Cruz about whether Mr. Wiscovitch's quadricycle violated the ordinance against driving vehicles in Old San Juan during Las Fiestas, but the exact details, as well as the timing of statements and events during the conversation are disputed. ECF No. 106-1 at 51, ¶¶ 9–16; ECF No. 134 at 6, ¶ 6; ECF No. 134-1 at 1, ¶¶ 5, 6, 7. The parties do not dispute that Mr. Wiscovitch was angry and upset during the interaction. ECF No. 106-1, at 51, ¶¶ 20–21; 52, ¶¶ 5-7; ECF No. 134 at 9, ¶ 28; ECF No 134-1 at 2, ¶ 12; ECF No. 134-2 at 67, ¶¶ 21–25; ECF No. 134-5 at 55, ¶¶ 20–25; 56, ¶ 1.

At some point during the exchange, Mayor Cruz directed Agent Vélez to call a Municipal police officer to come to their location. ECF No. 106-1 at 51, ¶ 21–22; ECF No. 134 at 6, ¶ 17; ECF 134-3 at 17, 7–8; ECF No. 134-4 at 12, ¶¶ 7-12; ECF No. 144 at 5, ¶ 34. After a disputed length of time, Agent Vélez managed to get the attention of Agent Rafael González, a member of the Municipal police force, who then arrived at the scene. ECF No. 106-2 at 12 ¶¶ 20-23; ECF No. 134 at 7, ¶ 20; 134-4 at 12, ¶¶ 2–25; ECF No. 134-12 at 3, ¶ 4; ECF No. 144 at 6, ¶ 39. Agent Vélez explained to Agent González that they had intervened with Mr. Wiscovitch and the reasons why the intervention occurred. ECF No. 106-2 at 12 ¶¶ 20-25; 31, ¶¶ 20–23. Eventually, Sergeant Samuel Pérez (hereinafter, "Sgt. Pérez") also arrived at the scene with Lieutenant Rafael Vázquez. ECF No. 134-3 at 15, ¶¶ 11–12; 16, ¶¶ 16–17; ECF No. 144 at 6, ¶ 44.

Although Mayor Cruz moved a short distance away, the officers of her security detail nevertheless remained with Mr. Wiscovitch because she was still close. ECF No. 134 at 3, ¶¶ 1–5; ECF No. 144 at 6, ¶ 45. Hence, at least three different Municipal police officers were at the scene with Mr. Wiscovitch in addition to Mayor Cruz's security detail. ECF No. 106-2 at 11, ¶¶ 22–24; ECF No. 106-4 at 7, ¶ 2–3; ECF No. 134 at 6, ¶ 18; ECF No. 134-2 at 69, ¶¶ 3–4. During the exchange with Mr. Wiscovitch, the officers requested that Mr. Wiscovitch provide identifying information, but it is disputed whether Mr. Wiscovitch ever verbally identified himself. It is undisputed that at the time of the events, Mr. Wiscovitch did not remember or know his driver's license number and that he had left his driver's license at his home. ECF No. 134-1 at 1, ¶ 2; ECF No. 144 at 7, ¶ 52.

Eventually Mayor Cruz returned to the scene and gave instructions to the Municipal officers that they should issue tickets to Mr. Wiscovitch. ECF No. 134-2 at 72, ¶¶ 9–11; ECF No. 134-4 at 15, ¶¶ 1–3. In response, Mr. Wiscovitch said to Mayor Cruz that he "would do anything in [his] power to not let her become the governor of Puerto Rico." ECF No. 106-3 at 72, ¶¶ 11–13; ECF No. 134 at 9–10, ¶ 29. At some point after that statement was made, Mayor Cruz gave an order to the officers after which the Municipal police officers arrested Mr. Wiscovitch. ECF No. 106-1 at 52, ¶¶ 21–22; ECF No. 134-3 at 18, ¶ 15–19; ECF No. 134-4 at 15, ¶ 4–5. The parties agree that the officers took Mr. Wiscovitch into custody for "obstructing justice," but the evidence is contradictory as to which officer made the decision to arrest Mr. Wiscovitch on that basis. ECF No. 106-2 at 63, ¶¶ 21–25; ECF No. 106-4 at 37, at ¶¶ 13–18; ECF No. 134-3 at 18, ¶ 18–19; ECF 134-4 at 15, ¶¶ 4–5; 19, ¶¶ 3–9; 37, ¶¶ 8–12. In their depositions, Sgt. Pérez testified that Agent González made the arrest of Mr. Wiscovitch, but Agent González testified that

Sgt. Pérez was the one responsible for executing the arrest. ECF NO. 134-3 at 19, ¶¶ 24; ECF No. 134-4 at 17, ¶¶ 12–15; ECF No. 144 at 13, ¶ 100.

Mr. Wiscovitch was then taken from the scene of the incident to the Covadonga Police Station on foot by the Municipal police officers, which included Agent González and Sgt. Pérez. ECF No. 106-2 at 30, ¶¶ 13–14; ECF No. 106-4 at 20, ¶¶ 5–13; ECF No. 134 at 16, ¶ 51; ECF No. 134-2 at 19, ¶ 20; ECF No. 144 at 9, ¶ 65. Upon Mr. Wiscovitch's arrival to the Covadonga Police Station, he was kept at the station, placed in an open office, and searched by Municipality of San Juan police officers. ECF No. 134-2 at 76–77, ¶¶ 7–15, 1–3. Ms. Castañeda arrived at the Covadonga Police station shortly after and brought with her Mr. Wiscovitch's identification card. ECF No. 106-3 at 77, ¶¶ 15–16; ECF No. 134-2 at 77, ¶¶ 15–16; ECF No. 134-3 at 23, ¶ 20; ECF No. 134-6 at 64, ¶¶ 24–25; ECF No. 144 at 9, ¶ 67. The Municipality held Mr. Wiscovitch's quadricycle and returned it to him after he was released the same day of the incident. ECF No. 106-3 at 79, ¶¶ 19–20; ECF No. 106-6 at 66, ¶¶ 18–25; 67 ¶¶ 8–12; ECF No. 134 at 17, ¶ 55; ECF No. 134-3 at 22, ¶ 25; 23, ¶ 1; ECF No. 144 at 10, ¶ 71.

While at the Covadonga Police Station, Mr. Wiscovitch received tickets for three administrative infractions, namely for (1) riding a bicycle without a helmet; (2) for not riding a bicycle in the right lane; and (3) for having a sign advertising Asiana Sushi Bar in violation of Section 14 of Municipal Ordinance 33, accompanied by a fine of $5,000. ECF No. 106-2 at 65, ¶¶ 5–14; 67, ¶¶ 15–17; ECF No. 106-7; ECF No. 134-12 at 3–4, ¶ 4; ECF No. 144 at 10, ¶ 74. Mr. Wiscovitch appealed all the infractions and attended a hearing on or around March 2017, but as of the date that the motion for summary judgment and the opposition to the same were filed, there had not been a resolution issued by the administrative court. ECF No. 134-2 at 102, ¶¶ 8–10; 101, ¶¶ 22–24; ECF No. 144 at 13, ¶ 96.

Mr. Wiscovitch was also issued a citation to appear at the San Juan Municipal Court for a charge of obstruction of justice. ECF No. 134 at 26, ¶ 73; ECF No. 144 at 10, ¶ 73. A complaint was filed against Mr. Wiscovitch charging him with violations to Article 246 of the Puerto Rico Penal Code based on him failing to provide his information for the administrative infractions of which he was accused. ECF No. 106-7; ECF No 134 at 18, ¶ 62. On February 27, 2017, a hearing was held at the Court of First Instance of San Juan which found that there was no probable cause for the obstruction of justice charge and dismissed it. ECF No. 134-9 at 11, ¶ 11; ECF No. 144 at 11, ¶ 80; 12, ¶ 89.

Following the incident on January 21, 2017, Mr. Wiscovitch stopped working "for a while," and received mental health treatment. ECF No. 134-7 at 90, ¶¶ 18–19; ECF No. 134-12 at 4, ¶ 7. After the events of January 21, 2017, Mr. Wiscovitch became distressed, anxious, depressed, and antisocial. ECF No. 134-2 at 87, ¶¶ 7–11; 90, ¶¶ 24–25; 91, ¶ 1. Mr. Wiscovitch decided to close Asiana Sushi Bar in 2017. ECF No. 134-2 at 49, ¶¶ 7–9, 16–17, 24; ECF No. 144 at 3, ¶ 23.

## IV.    PLAINTIFFS' SECTION 1983 CLAIMS

Section 1983 allows individuals within the United States to vindicate substantive rights under the United States Constitution and federal laws through a civil action in federal court. Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).

Section 1983 of Title 42 of the United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In effect, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights." Mitchum v. Foster, 407 U.S. 225, 242 (1972).

For a claim to be cognizable under Section 1983, the complaining party must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct constitutes a deprivation of a constitutional right or a federal statutory right. See Parratt v. Taylor, 451 U.S. 527, 535-536 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Martínez-Vélez v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990); Vicenty Martell v. Estado Libre Asociado de P.R., 48 F. Supp. 2d 81, 89 (D.P.R. 1999).[5]

### A. Whether There Existed Probable Cause to Defeat Mr. Wiscovitch's Claim of Retaliatory Arrest

Plaintiffs claim that Mr. Wiscovitch's arrest was a retaliatory arrest in violation of his First Amendment speech rights. ECF No. 14 at 8. In seeking summary judgment Defendants assert that there is no genuine dispute that there existed independent probable cause for Mr. Wiscovitch's arrest for obstruction of justice. ECF No. 147 at 12; ECF No. 145 at 8. Plaintiffs respond that there was no probable cause for the Mr. Wiscovitch's arrest for obstruction of justice, and the but-for cause of his arrest was Mayor Cruz's order in retaliation for his political statement. ECF No. 136 at 11–12, 13, 14, 20–23; ECF No. 135 at 8–10.

To prevail on a First Amendment claim of retaliatory arrest, the plaintiff must show by a preponderance of the evidence that he was arrested by a governmental official after engaging in protected speech and that the arrest would not have occurred absent the official's motive to

---

[5] "For section 1983 purposes, Puerto Rico is deemed equivalent to a state." Déniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002).

retaliate against the plaintiff for the protected speech (i.e. there was no probable cause and the speech was the "but-for" cause of the arrest). <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1722 (2019).

> Absent [showing there was no probable cause for the arrest], a retaliatory arrest claim fails. But if the plaintiff establishes the absence of probable cause, then the <u>Mt. Healthy</u> test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation.

<u>Id</u>. at 1725 (internal quotations omitted).[6]

Whether an officer had probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of an objectively reasonable officer. <u>Maryland v. Pringle</u>, 540 U.S. 366, 371 (2003). Probable cause existed if "at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the arrestee had committed a crime. <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). Thus, when reviewing an allegedly retaliatory arrest, the question is "whether the circumstances, viewed objectively, justify [the challenged] action," and if so, conclude "that action was reasonable *whatever* the subjective intent motivating the relevant officials." <u>Nieves</u>, 139 S. Ct. at 1725 (citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 736 (2011) (emphasis in original).

If there is no dispute as to the facts leading to the arrest, it is pointless to submit a question of probable cause to a jury. <u>Acosta v. Ames Department Stores, Inc.</u>, 386 F.3d 5, 9 (1st Cir. 2004) (citing <u>Bolton v. Taylor</u>, 367 F.3d 5, 8 n. 2 (1st Cir.2004). However, only a jury can resolve reasonably disputed issues of fact, but whether a given set of facts constitutes probable cause is a legal question. <u>Jordan v. Town of Waldoboro</u>, 943 F.3d 532, 551 (1st Cir. 2019)

---

[6] <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977).

(citing <u>Dir. Gen. of R.R.s v. Kastenbaum</u>, 263 U.S. 25, 28 (1923) ("Probable cause is a mixed question of law and fact. The court submits the evidence of it to the jury, with instructions as to what facts will amount to probable cause if proved.")

The parties agree that after Mr. Wiscovitch was stopped, Mr. Wiscovitch was angry and upset. ECF No. 106-1, at 51, ¶¶ 20–21; 52, ¶¶ 5–7; ECF No. 134 at 9; ¶ 28; ECF No. 134-2 at 67, ¶¶ 21–25; ECF No 134-1 at 1, ¶ 12; ECF No. 134-5 at 55, ¶¶ 20–25; 56, ¶ 1. In his deposition, Mr. Wiscovitch testified that he was also asking the police officers what crime he had committed that would justify the stop, but that nobody answered him. ECF No. 134-2 at 65, ¶¶ 7–9. Defendants produced evidence that that both Mayor Cruz and the officers explained that Mr. Wiscovitch had violated municipal ordinances. ECF No. 106-1 at 51, ¶¶ 9–16.

By the time Sgt. Pérez arrived, Agent González and the rest of the Mayor Cruz's security detail continued to interact with Mr. Wiscovitch on the sidewalk and Mayor Cruz moved away to a different place nearby. ECF No. 134 at 3, ¶¶ 1–5; ECF No. 134-3 at 11, ¶¶ 3–4; ECF No. 144 at 6, ¶¶ 43, 45. Defendants cite the testimony of Agent González, who asserts that Mr. Wiscovitch refused to give his identifying information to the police after being asked repeatedly to identify himself. ECF No. 106-2 at 14, ¶¶ 6–8; 13, ¶¶ 18–22. However, Mr. Wiscovitch denies that he refused to identify himself during the entire interaction with the police and Mayor Cruz. ECF No. 134-2 at 69, ¶¶ 19–25; 70, ¶¶ 1–9. In his deposition, Mr. Wiscovitch admits that he initially refused to provide his identifying information until he was told which alleged violations justified his stop. ECF 134-1 at 2, ¶ 10; ECF 134-2 at 59, ¶¶ 19–21; 69, ¶¶ 3–9. Mr. Wiscovitch also testified that he asked for a police supervisor. ECF No. 134-2 at 69, ¶¶ 19–21; ECF No. 134-12 at 3, ¶ 4. Agent González testified in his deposition that he contacted Sgt. Pérez and requested him to come to the location of the stop. ECF No 106-4 at

11, ¶¶ 5–13; ECF No. 134 at 11, ¶ 33. Upon Sgt. Pérez's arrival, Mr. Wiscovitch claims that he

eventually identified himself to Sgt. Pérez, who he believed to be a "supervisor." ECF No. 134-2

at 69, ¶¶ 19–25; 70, ¶¶ 1–9; ECF 134-1 at 2, ¶ 10. Sgt. Pérez, however, testified in his deposition

that he did not learn Mr. Wiscovitch's name until he brought him to the police station. ECF No.

106-2 at 17, ¶¶ 24–25; 60, ¶¶ 2–3; ECF No. 106-4 at 36, ¶¶ 8–11.

There is consensus that during the encounter, Mr. Wiscovitch did not provide to the

officers his driver's license number, but Mr. Wiscovitch explained that was because he did not

have his license with him that day and he did not remember his license number. ECF No. 106-2

at 60, ¶¶ 7–10; ECF No. 134-2 at 69, ¶¶ 11–12; ECF No. 134-1 at 1, ¶ 2. The parties also agree

that Ms. Castañeda eventually brought Mr. Wiscovitch's personal ID to the police station. ECF

No. 106-2 at 17, ¶¶ 24–25; 60, ¶¶ 2–3; ECF No. 134 at 16, ¶ 52. Before that time,

Agent González claimed that Mr. Wiscovitch refused to provide his name and address, while

Mr. Wiscovitch testified that he provided his personal information to Sgt. Pérez. ECF No. 106-2

at 60, ¶¶ 5-6; ECF No. 106-3 at 69, ¶¶ 14–17; ECF No. 134-2 at 69, ¶¶ 19-21.

About twenty to thirty minutes passed after Mr. Wiscovitch was initially stopped. ECF

No. 106-3 at 72, ¶¶ 17–19. Defendants contend, and Plaintiffs dispute, that Mr. Wiscovitch

steadfastly refused to identify himself until he finally told the police that they "would have to

arrest [him]." ECF No. 106-1 at 52, ¶ 21; ECF No. 106-2 at 60, ¶¶ 15–17; ECF No. 134-1 at 1, ¶

8. Mr. Wiscovitch asserts that he did eventually identify himself and that he never told the

officers that they would have to arrest him. ECF No. 134-1 at 1, ¶ 10.

Finally, before the officers had yet given Mr. Wiscovitch tickets for any infractions,

Mayor Cruz returned to where Mr. Wiscovitch was talking to the officers and told the officers to

fine Mr. Wiscovitch. ECF No. 134-2 at 72, ¶¶ 9–11; ECF No. 134-4 at 15, ¶¶ 1–3. In response,

Mr. Wiscovitch became angry and yelled at Mayor Cruz that that he "would do anything in [his] power to not let her become the governor of Puerto Rico." ECF No. 134-2 at 72, ¶¶ 1–3; ECF No. 134-3 at 33, ¶¶ 13–17; ECF No. 134-12 at 3, ¶ 4; ECF No. 144 at 8, ¶ 55. Mayor Cruz acknowledges she was offended by Mr. Wiscovitch's attitude. ECF No. 134-5 at 56, ¶ 8. Mr. Wiscovitch also testified that upon hearing his statement, Mayor Cruz became angry. ECF No. 134-2 at 72, ¶ 14; ECF No. 144 at 8, ¶ 58. Despite this, Mayor Cruz testified that she replied that her approach had nothing to do with politics, that it had to do with administration, and that she respected what Mr. Wiscovitch thought. ECF No. 106-1 at 52, ¶¶ 11–14.

Mayor Cruz then gave the officers some sort of instruction, although the specifics are disputed. Mayor Cruz alleges that she told the officers to "deal with this" after Mr. Wiscovitch again refused to identify himself. ECF No. 106-1 at 52, ¶¶ 15–19, 21–22. However, Agent González and Sgt. Pérez both testified in their depositions that after Mr. Wiscovitch made his political statement, Mayor Cruz ordered them to "[a]rrest him." ECF No. 134-3 at 18, ¶ 15–19; ECF No. 134-4 at 15, ¶ 4–5. It is undisputed that Mayor Cruz also told the officers to "take him away." ECF No. 134-2 at 72, ¶ 14; ECF No. 134-4 at 15, ¶ 4; 17, ¶ 8; ECF No. 144 at 8, ¶ 58. After this order was given, Mr. Wiscovitch was arrested by the officers of the Municipality of San Juan. ECF No. 134-2 at 72 at 15–16, ECF No. 134-3 at 19, ¶¶ 9, 20.

Mayor Cruz claims that her instructions were not an order; but rather, the police officers made the independent choice to arrest Mr. Wiscovitch for obstruction of justice because he would not identify himself. ECF No. 106-2 at 37, ¶¶ 8–12; 60, ¶¶ 21–24. Sgt. Pérez claims that Agent González arrested Mr. Wiscovitch based on obstruction of justice. ECF No. 106-4 at 17, ¶¶ 11–16; 22, ¶¶ 16–21. However, Agent González testified that Sgt. Pérez made the arrest, and that he informed Mr. Wiscovitch that he was being arrested for obstruction of justice. ECF No.

134-4 at 17, ¶¶ 19–23. Mr. Wiscovitch denies that he was told the reason for his arrest, and he argues that he was arrested solely in retaliation for his political statement. ECF No. 134-1 at 2, ¶ 11; ECF No. 134-2 at 72, ¶¶ 15–16. The parties agree that Mr. Wiscovitch was eventually charged with obstruction of justice for violating Article 246 of the Puerto Rico Penal Code after he allegedly failed to provide his identifying information. 33 L.P.R.A. § 5336; ECF No. 106-7; ECF No 134 at 18, ¶ 62.

The above evidence creates disputes of material fact that preclude summary judgment on Plaintiffs' retaliatory arrest claim. Here, Mr. Wiscovitch's statement to Mayor Cruz constitutes protected speech. Under <u>Nieves</u>, Defendants bear the burden of showing an absence of a genuine issue of material fact as to whether Mayor Cruz's order was retaliatory and whether it was the but for cause of Mr. Wiscovitch's arrest. Whether the arrest would have happened regardless of any retaliatory motive by Mayor Cruz depends on whether the officers had independent probable cause to arrest Mr. Wiscovitch due to his failure to identify himself. But whether Mr. Wiscovitch failed to identify himself is a material fact in dispute.

Defendants urge there is no dispute as to the reasonable basis for Mr. Wiscovitch's arrest for obstruction of justice because he repeatedly refused to identify himself after being stopped. However, the parties agree that Mr. Wiscovitch did not have his driver's license during the incident in question. Furthermore, Plaintiffs have introduced testimony from Mr. Wiscovitch where he claims that although he initially refused to identify himself, he did eventually verbally identify himself to at least Sgt. Pérez before Mr. Wiscovitch's arrest was ordered. This constitutes a genuine dispute of material fact. No objectively reasonable police officer could have believed there was probable cause to arrest Mr. Wiscovitch for refusing to identify himself if Mr. Wiscovitch had in fact identified himself to the police. Fundamentally, a jury needs to

determine whether Mr. Wiscovitch's or Mayor Cruz and the officers' version of events is more credible. A reasonable jury weighing the evidence could find that Mr. Wiscovitch did verbally identify himself. If true, the officers could not have reasonably believed there was probable cause to arrest Mr. Wiscovitch based on obstruction of justice for failing to identify himself.

The Plaintiff also introduced evidence that could lead a reasonable jury to find that Mr. Wiscovitch's statement made Mayor Cruz angry and that her instructions were linked to Mr. Wiscovitch's statement. A reasonable jury could consequently also conclude that when Mayor Cruz gave instructions to the officers, her orders were in retaliation for Mr. Wiscovitch's statement. A jury could find that obstruction of justice was merely pretext that the officers used to arrest Mr. Wiscovitch to follow the Mayor's directive. Plaintiffs have therefore shown evidence creating a genuine dispute as to whether Mayor Cruz's instructions were the but-for cause of Mr. Wiscovitch's arrest.

Indulging all reasonable inferences in Plaintiff Mr. Wiscovitch's favor, the above evidence could lead a jury to find no facts existed that would support a finding of independent probable cause for Mr. Wiscovitch's arrest and that Mayor Cruz's retaliatory motive was the but-for cause of Mr. Wiscovitch's arrest. Thus, Mr. Wiscovitch's claim for retaliatory arrest under the First Amendment of the United States Constitution should survive Defendants' motions for summary judgment.

### B. Whether There Existed Probable Cause to Defeat Mr. Wiscovitch's Claim for Violation of His Fourth Amendment Rights

Plaintiff Mr. Wiscovitch also claims that Defendants violated his Fourth Amendment rights by subjecting him to an unlawful stop and subjecting him to unlawful arrest without probable cause. ECF No. 135 at 10–11; ECF No. 136 at 7, 15–18. In moving for summary judgment on this claim, Defendants argue that there is no genuine dispute of material fact that

Defendants lawfully stopped Mr. Wiscovitch and that they had probable cause to arrest him for obstruction of justice. ECF No. 105 at 13–14; ECF No. 107 at 5–10; ECF No. 145 at 7–8, 9.

### a.  Probable Cause for Obstruction of Justice

The elements required to sustain a claim of unlawful arrest under § 1983 are analogous to the common law tort of false arrest. Karamanoglu v. Town of Yarmouth, 15 F.4th 82, 87 (1st Cir. 2021) (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)). "A federal constitutional tort of false arrest—and thus an unlawful arrest under § 1983—occurs when there is detention without probable cause and without legal process . . . ." Karamanoglu, 15 F.4th at 87. To prevail on a claim of false arrest, the plaintiff must show that the arresting officers lacked probable cause to believe the plaintiff had committed a crime. See Jordan, 943 F.3d at 551.

For the same reasons relating to probable cause on Mr. Wiscovitch's First Amendment retaliatory arrest claim, there exists a genuine factual dispute about whether Mr. Wiscovitch identified himself to the municipal police officers. Defendants urge that Mr. Wiscovitch's arrest for obstruction of justice was because he failed to identify himself to the Municipality of San Juan officers when they attempted to fine him for traffic violations. Plaintiffs introduced contrary evidence that Mr. Wiscovitch identified himself verbally to Sgt. Pérez. The court cannot resolve such a factual dispute at the summary judgment stage. Hence, Plaintiff's claim for unlawful arrest under the Fourth Amendment also should survive Defendants' motions for summary judgment.

### b.  Reasonable Suspicion for Mr. Wiscovitch's Initial Stop

Plaintiffs also argue that there was no justification for the initial stop because Mayor Cruz and her security detail erroneously believed Mr. Wiscovitch had committed traffic violations when his quadricycle does not violate any of the municipal ordinances or ordinances for Las

Fiestas. ECF No. 135 at 11. The Fourth Amendment of the United States Constitution protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV. Temporary detention of an individual during a stop is a "seizure" of their person under the Fourth Amendment "if the individual is stopped under color of law and the circumstances are such that a reasonable person would not feel free to leave." Walker v. Femino, 311 F.Supp.3d 441, 449 (D. Mass. 2018) (citing United States v. Camacho, 661 F.3d 718, 724–25 (1st Cir. 2011)); Whren v. United States, 517 U.S. 806, 809–10 (1996).

### 1. Reasonable Mistake of Law for the Stop

The temporary detention of an individual is proper when the police have reasonable suspicion that the person has committed a traffic infraction. Hein v. North Carolina, 574 U.S. 54, 60 (2014). The subjective or actual motivations of the officers conducting the stop does not impact the constitutionality of the stop. Whren, 517 U.S. at 809–10. An official may act on reasonable suspicion even if the official had a mistaken belief about the law, as long as the mistake of law was reasonable. Hein, 574 U.S. at 61 ("Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground.").

It is undisputed that both Mayor Cruz and Municipality of San Juan Agent Vélez saw Mr. Wiscovitch riding his quadricycle down San Francisco street before he was stopped. ECF No. 106-1 at 47, ¶¶ 21–25; 48, ¶ 1; ECF No. 106-3 at 107, ¶¶ 15–21; ECF No. 106-5 at 12, ¶¶ 10–12; ECF No. 134-2 at 64, ¶¶ 19–23. Defendants justify the stop by alleging that Mr. Wiscovitch was stopped for "obvious" administrative and traffic violations. ECF No. 106-1 at 51, ¶¶ 9–16; ECF No. 106-2 at 12 ¶¶ 20-25; 31, ¶¶ 20-23; 61, ¶¶ 23–25; 66, ¶¶ 2–7. After stopping Mr. Wiscovitch, Mayor Cruz asked a member of her security detail to fetch the nearest

police officer, which led Mr. Wiscovitch to feel that he was "detained." ECF No. 106-1 at 51, ¶ 21–22; ECF No. 134-2 at 65, ¶¶ 16–17, 23–25.

Mayor Cruz then confronted Mr. Wiscovitch. While what exactly was said is disputed, the parties agree that there was a verbal exchange between Mr. Wiscovitch and Mayor Cruz about whether the quadricycle violated the ordinance against driving vehicles in Old San Juan during Las Fiestas de la Calle San Sebastian. ECF No. 106-1 at 51, ¶¶ 9–16; ECF No. 134 at 6, ¶ 6; ECF No. 134-1 at 1, ¶¶ 5, 6, 7. Defendants assert that Mr. Wiscovitch was operating a "vehicle." ECF No. 134 at 3, ¶ 9. Plaintiffs contend that he was riding a "bicycle." ECF No. ECF No. 134-2 at 56, ¶¶ 20–32; 57, ¶ 1; ECF No. 144 at 2–3, ¶ 13. It is not pellucidly evident that Mr. Wiscovitch's quadricycle violates Municipal Ordinance 33, Series 2016-2017. Municipal Ordinance 33 does not include a definition of the term "vehicle," and therefore, any prohibition on vehicles under the provisions of the ordinance does not obviously apply to Mr. Wiscovitch's quadricycle. See ECF No. 116-2. [7]

However, under the Puerto Rico Vehicle and Traffic Law, a "vehicle" is defined as "any machine or animal in which or by means of which any person or property is or may be transported or carried upon a public road, with the exception of those exclusively used on rails." 9 L.P.R.A. § 5001(100). Meanwhile, a "bicycle" is defined as "any vehicle propelled by muscular power, consisting of one (1)[] or more wheels, built to carry one (1) or more persons on

---

[7] The ordinances in question for this case are not available in the English language and must be accompanied by a certified translation into English under the criteria set forth by Local Rule 5(c). However, Defendants filed translations of only selected portions of the ordinances at issue. Consequently, only the translated portions provided are considered for purposes of summary judgment. Plaintiffs filed full translations of both ordinances, as well as translations of their other Spanish-language exhibits. ECF Nos. 134-13, 134-14, 134-15, 134-16. However, Plaintiffs' translations were not certified and cannot be relied upon under Local Rule 5(c). Plaintiff's uncertified translation does mention, in its relevant part, that "[t]hree paths shall be established for use as emergency lanes: the south lane of Norzagaray street, San Francisco street and San Justo street from Norzagaray street through Comercio street. These streets shall remain free of vehicles and obstructions that prevent the free traffic of emergency vehicles." ECF No. 134-15 at 5, § 5.

its structure." 9 L.P.R.A. § 5001(15) (emphasis added). In contrast, a "motor vehicle" "[s]hall mean every underline self-propelled vehicle, designed to operate on public roads." 9 L.P.R.A. § 5001(101) (emphasis added). Therefore, under the plain definitions of the Puerto Rico Vehicle and Traffic Law, Mr. Wiscovitch's quadricycle is a bicycle, because it has one or more wheels, can carry one or more passengers, and because it is propelled by muscular power and not self-propelled. However, Mr. Wiscovitch's quadricycle is also a vehicle (though not a motor vehicle) because it does not move on rails and is a machine by which any person or property may be transported on a public road. Consequently, under the Puerto Rico Vehicle and Traffic Law, Mr. Wiscovitch's quadricycle is both a vehicle and a bicycle.

Given the peculiarity of Mr. Wiscovitch's quadricycle, it was not unreasonable for Mayor Cruz and Agent Vélez to conclude that Mr. Wiscovitch's quadricycle was not permitted on the streets during Las Fiestas. The law does not require legal certainty for a stop, but rather permits reasonable mistakes of law. Hein, 574 U.S. at 61. Even if Mayor Cruz and Agent Vélez were mistaken as to whether the quadricycle violated the ordinances for Las Fiestas, such a mistake was reasonable and did not violate Mr. Wiscovitch's Fourth Amendment rights.

Furthermore, Agent Vélez testified that the reason for one of Mr. Wiscovitch's traffic violations was because he was not wearing a helmet. ECF No. 106-2 at 61, ¶¶ 23–25; 66, ¶¶ 2–7; ECF No. 134 at 9, ¶ 26. Mr. Wiscovitch does not dispute that he was not wearing a helmet while riding his quadricycle. ECF No. 134 at 9, ¶ 26. Not wearing a helmet while riding a bicycle is in violation of Article 12.002 of Municipal Ordinance 8(k), Series 2002-2003. ECF No. 116-3 at 2.[8] Again, while an observer may not conclude that Mr. Wiscovitch was riding a "bicycle" at the time, the Puerto Rico Vehicle and Traffic Law does classify his quadricycle as a bicycle, and it

_____

[8] Plaintiffs however dispute whether Article 12.002 of the Municipal Ordinance 8, Series 2002-2003 was the basis for any infraction for which Mr. Wiscovitch was detained. ECF No. 134 at 19, ¶ 64.

would be a reasonable conclusion that the law required Mr. Wiscovitch to wear a helmet while operating his quadricycle. Accordingly, stopping Mr. Wiscovitch for failure to wear a helmet also did not violate Mr. Wiscovitch's Fourth Amendment rights.[9]

### 2. The Collective Knowledge Doctrine

Additionally, Plaintiffs claim that because none of the officers who later arrested Mr. Wiscovitch were present at the time he was stopped, they could not have found probable cause for obstruction of justice because they did not witness the original traffic offense that he was allegedly obstructing. ECF No. 135 at 10. However, the collective knowledge doctrine holds that "an officer may rely on the collective or pooled knowledge of other officers. Knowledge can be imputed to an officer acting in accordance with the direction of another officer who has reasonable suspicion." United States v. Mendonca, 682 F. Supp. 2d (D. Mass. 2010) (internal citations omitted). The First Circuit recognizes that reasonable suspicion and probable cause can be established through the doctrine of collective knowledge. United States v. Barnes, 506 F.3d 58, 62 (1st Cir. 2007).

The parties do not dispute that Agent Vélez, a San Juan Municipal Police Officer assigned to Mayor Cruz's security detail, called Agent González to the scene and explained to Agent González the reasons for Mr. Wiscovitch's stop. ECF No. 106-2 at 12 ¶¶ 20–25; 31, ¶¶ 20–23. Agent González was one of two Municipal officers who later effectuated Mr. Wiscovitch's arrest, ostensibly for obstruction of justice due to his refusal to identify himself. Under the collective knowledge doctrine, Agent Vélez's reasonable suspicion of Mr. Wiscovitch's traffic infractions could be imputed to Agent González when Agent González

---

[9] Other possible grounds for the initial stop could have been that Mr. Wiscovitch was riding his quadricycle in one of the three streets designated as emergency lanes (see supra note 7) and was carrying a promotional sign without prior approval, but these alternatives are unnecessary to reach the conclusion that the initial stop of Mr. Wiscovitch was not unconstitutional.

acted in accordance with Agent Vélez's direction and explanation. Therefore, any arrest that Agent González executed based on probable cause that Mr. Wiscovitch was obstructing the penalties for his alleged traffic violations would also not have violated Mr. Wiscovitch's Fourth Amendment rights.

In conclusion, there is no genuine dispute of material fact that Mayor Cruz and Agent Vélez had reasonable suspicion to stop Mr. Wiscovitch for what they reasonably believed, correctly or incorrectly, were traffic infractions or violations to the municipal ordinance. There is also no dispute of fact that the knowledge was imputed to Agent González who was later involved in Mr. Wiscovitch's arrest. Consequently, Defendants' motions for summary judgment should be granted with regard to Plaintiff Mr. Wiscovitch's claim for unlawful seizure in violation of the Fourth Amendment at the time of his initial stop, and that claim should be dismissed.

### C. Whether Mayor Cruz is Entitled to Qualified Immunity

Mayor Cruz petitions for summary judgment arguing that she is entitled to qualified immunity on Plaintiff Mr. Wiscovitch's claims against her in her individual capacity, because she acted properly in engaging with Mr. Wiscovitch. ECF No. 105 at 15–17; ECF No. 147 at 12–14. Qualified immunity protects government officials from liability in their individual capacity after performing discretionary functions for conduct that is objectively reasonable. Campbell v. Casey, 166 F.Supp.3d 144, 148 (D. Mass. 2016); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is meant to protect public officials from personal liability in all cases except for those involving "the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

A court inquiring into the applicability of qualified immunity at the summary judgment stage must proceed through the following steps: First, the court must find that the facts, taken in a light most favorable to the party opposing summary judgment, make out a constitutional violation. Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014). Second, the court must determine that the right allegedly violated was clearly established at the time the offending conduct. Id.; Harlow, 457 U.S. at 818. In deciding the second step, the court must conclude that "the contours of the right" were "clearly established" and that a "reasonable defendant would have understood that he was violating the right." Hunt, 773 F.3d at 367; Irish v. Fowler, 979 F.3d 65, 76 (1st Cir. 2020).

A right must be clearly established as "dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 138 S.Ct. 577, 589–90 (2018) (internal citations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply . . . . Otherwise, the rule is not one that every reasonable official would know." Id. (internal citations omitted).

However, the more appalling the decisions made or actions taken in light of well-established constitutional principles, the less likely an official will be shielded by the qualified immunity doctrine. Irish, 979 F.3d at 76 (citing Browder v. City of Albuquerque, 787 F.3d 1076, 1082–83 (10th Cir. 2015) ("[T]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."); see also Taylor v. Riojas, 141 S.Ct. 52, 53 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution.").

First, the facts taken in the light most favorable to Mr. Wiscovitch make out constitutional violations by Mayor Cruz. As discussed above, Plaintiffs allege that Mayor Cruz ordered Mr. Wiscovitch's arrest in retaliation for a protected political statement. Plaintiffs also allege that Mayor Cruz ordered Mr. Wiscovitch's arrest in violation of the Fourth Amendment because there was no probable cause to order his arrest for any crime.

Second, both constitutional rights that Mr. Wiscovitch alleges Mayor Cruz violated were clearly established prior to January 2017, when the events at issue occurred. Before 2017, the First Amendment protection against government officials subjecting an individual to retaliatory actions for engaging in protected speech was a clearly established right. Hartman v. Moore, 547 U.S. 250, 256 (2006) ("Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right . . . .")(citing Crawford-El v. Britton, 523 U.S. 574, 588 n. 10 (1998) (internal quotations omitted).

More specifically, to arrest an individual in retaliation for political speech absent independent probable cause—even if that speech was a hostile response to police action—was also an established violation of constitutional rights before 2017. Norwell v. City of Cincinnati, Ohio, 414 U.S. 14, 16 (1973); See also City of Houston, Tex. v. Hill., 482 U.S. 451, 463 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); Cf. Reichle v. Howards, 566 U.S. 658 (2012). Likewise, the right not to be arrested absent probable cause is protected by the Fourth Amendment as clearly recognized by the Supreme Court before 2017. See Wallace, 549 U.S. at 388 (recognizing § 1983 claims for damages resulting from false arrest in violation of the Fourth Amendment).

Furthermore, the allegations against Mayor Cruz implicate obvious violations of constitutional principles which pass muster as clearly established rights—namely the right to be free from arrest for political speech and the right to be free from arbitrary arrest. See Irish, 979 F.3d at 76; Taylor, 141 S.Ct. at 53. A reasonable person would have known that it is a violation of First Amendment rights to order an individual's arrest because the individual made a political statement. A reasonable person would also have known it is a violation of Fourth Amendment rights to order someone arrested without reason to believe that person committed a violation of the law. There are genuine disputes as to whether Mayor Cruz in fact violated these rights, but those facts must be left to a jury. Based on the Plaintiffs' allegations, Mayor Cruz's behavior would have violated clearly established constitutional rights of which a reasonable person would be aware.

In sum, Plaintiff Mr. Wiscovitch raises evidence against Mayor Cruz, taken in the light most favorable to him, that makes out clearly established constitutional violations. Mr. Wiscovitch raises a genuine dispute of material fact as to whether Mayor Cruz violated his First and Fourth Amendment rights which requires resolution by a jury. Accordingly, Mayor Cruz is not entitled to qualified immunity and summary judgment on that basis should be denied.

### D.  Whether the Municipality Can be Sued for a Custom or Policy

In its motion for summary judgment, the Municipality of San Juan argues that the city cannot be held liable because there is no genuine dispute that the Municipality did not have a custom or policy that resulted in the deprivation of a constitutional right. ECF No. 107 at 5–6, 10–13. Generally, a local government such as a municipality cannot be sued under § 1983 under a theory of *respondeat superior* for an injury caused by its employees or agents. Monell v. Dep't

28

of Soc. Servs., 436 U.S. 658, 694 (1978). However, a municipality is liable when the execution

of the municipal government's policy or custom, either made by lawmakers or by those "whose

edicts or acts may fairly be said to represent official policy," is the moving force behind a

constitutional violation. Id.; Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st

Cir. 2005).[10] A municipality is still only liable if an actual constitutional violation occurred. Id.

at 26.

Only municipal officials who have "final policymaking authority" as defined by state law

may subject the municipal government to § 1983 liability. City of St. Louis v. Praprotnik, 485

U.S. 112, 123 (1988); Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). "Municipal liability

attaches only where the decisionmaker possesses final authority to establish municipal policy

with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

The Supreme Court has announced that a single act by the final policymakers may constitute

official government policy creating liability. Id. ("[M]unicipal liability may be imposed for a

single decision by municipal policymakers under appropriate circumstances. No one has ever

doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its

properly constituted legislative body . . . because even a single decision by such a body

unquestionably constitutes an act of official government policy."). A single decision by a single

final policymaker can constitute policy creating municipal liability. Welch, 542 F.3d at 941

(holding that a single decision by the Chief of Police, as a final policymaker in police matters,

created liability for the municipality). Puerto Rico law gives the Mayor of San Juan ultimate

authority over the administration of the Municipal Police Force. ECF No. 106 at 5, ¶ 31; ECF

---

[10] The requirement that the constitutional violation be the product of a municipal custom or policy must be
demonstrated regardless if the Plaintiff seeks monetary damages or prospective relief. L.A. Cnty. v. Humphries, 562
U.S. 29, 30 (2010).

No. 134 at 10, ¶ 31. Puerto Rico's Municipal Police Law provides, "The highest authority in the direction of the Municipal Police shall be vested in the mayor, but the immediate direction and supervision of the Corps shall be under the charge of a Commissioner, who shall be appointed by the mayor with the advice and consent of the municipal assembly." 21 L.P.R.A. § 1064.

Turning to the facts of this case, Plaintiffs allege that Mayor Cruz directly ordered Municipal police officers, her subordinates, to immediately effectuate the arrest of Mr. Wiscovitch. Plaintiffs charge that Mayor Cruz's order was in violation of Mr. Wiscovitch's First and Fourth Amendment Rights. The powers that Puerto Rico Law vested in Mayor Cruz demonstrate that she possessed final authority to establish municipal policy with respect to policing. It follows that as the highest authority over the direction of the Municipal Police force, if Mayor Cruz ordered the officers then present to arrest Mr. Wiscovitch—a contested fact—that was an order that the officers could not very well disobey. Mayor Cruz's single decision, as the final policymaking official with respect to directing the Municipal Police force, was enough to impose liability on the Municipality if the order to arrest Mr. Wiscovitch was ever made by Mayor Cruz and Mr. Wiscovitch's subsequent arrest by police officers violated his constitutional rights. As discussed above, whether Mayor Cruz or the Municipal officers actually violated Mr. Wiscovitch's rights must be resolved by a jury. Thus, summary judgment should be denied with regard to the Municipality of San Juan's liability for alleged violation of Plaintiff Mr. Wiscovitch's First Amendment and Fourth Amendment Rights.

### E.  Whether Mr. Wiscovitch Lacks Standing to Bring a First Amendment Commercial Speech Claim and Whether His Claim is Moot

Defendants argue that Mr. Wiscovitch lacks standing to permanently enjoin Defendants from collecting the $5,000 fine because the commercial speech rights allegedly violated belonged to Asiana Sushi bar, which is not a party to this suit. ECF No. 107 at 16–19; ECF No.

105 at 19–20. Under Article III of the United States Constitution, the jurisdiction of Federal Courts is limited to "Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). This so being, as a threshold matter, federal courts must be satisfied that a plaintiff is the correct person to bring the case at bar by possessing the requisite constitutional standing. Id. at 560. The Supreme Court has enacted a three-part test for standing. First, the plaintiff must have suffered an injury in fact that is concrete and particularized, as well as actual, imminent, and not conjectural or hypothetical. Id. Second, there must exist a causal connection between the injury and the complained conduct, the injury being fairly traceable to the challenged action of the defendant. Id. Third, it must be likely and not speculative that the injury will be redressed by a favorable decision by the court. Id. at 561.

Ordinarily, a party has no standing to assert the First Amendment rights of third parties. Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 49 (1st Cir. 2005). To have standing in commercial speech cases, a plaintiff must claim a "specific present objective harm or a threat of specific future harm" that chills the plaintiff's commercial speech. Bigelow v. Virginia, 421 U.S. 809, 816 (1975). Such harm could manifest as a criminal prosecution or the application of a fine against the plaintiff. Id. at 816–17. Regarding standing, a corporation and its shareholders are "distinct juridical persons." Pagán v. Calderon, 448 F.3d 16, 28 (1st Cir. 2006).

Here, in moving for summary judgment, the Municipality of San Juan argues that "Mr. Wiscovitch's bike had commercial advertising for Asiana and that the infringement of commercial speech was not directed at him, but to Asiana." ECF No. 107. It is undisputed that Asiana Food and Beverage, Inc. was incorporated on October 8, 2015, so at the time of the incident and at the time the fine was issued, Asiana and Mr. Wiscovitch were distinct juridical persons. ECF No. 106-10; ECF No. 134 at 18, ¶ 60. However, it is also undisputed that the

$5,000 fine was not assessed against Asiana; it was assessed against Mr. Wiscovitch. ECF No.

106-3 at 101, ¶¶ 20–25; 103, ¶¶ 9–10; ECF No. 106-7 at ¶ 31. Mr. Wiscovitch alleges that § 14

of Municipal Ordinance 33 was unconstitutional and seeks to enjoin collection of the $5,000

assessed against <u>himself</u>.

   Therefore, as in <u>Bigelow</u>, Mr. Wiscovitch is not seeking to "raise the hypothetical rights

of others." He does not seek to vindicate the rights of Asiana Sushi Bar. Rather, he seeks to

enjoin enforcement of the fine assessed against his own person which he alleges violated his own

commercial speech rights.[11] Mr. Wiscovitch has already been assessed this fine, although he has

not yet paid it. ECF No. 134-2 at 102, ¶¶ 8–10; 101, ¶¶ 22–24; ECF No. 144 at 13, ¶ 96.

Therefore, under the first step in the standing analysis, the fine against Mr. Wiscovitch presents

an injury that is both concrete and particularized. However, as will be discussed below Mr.

Wiscovitch's alleged injury is not actual or imminent, so his claim must fail under the first prong

of the standing analysis.

   In moving for summary judgment on Mr. Wiscovitch's request for injunctive relief, the

Municipality contends the "said challenge to the constitutionality of the Municipal Order is

completely moot since more than four (4) years have passed since it was enacted and expired on

its own terms." ECF No. 145 at 15.[12] More importantly, in an informative motion filed pursuant

to the court's order seeking clarification, the Municipality informed the court that "it will no

longer seek to impose a fine on Mr. Wiscovitch" should the fine be upheld in the administrative

---

[11] The court does not reach the constitutionality of Municipal Ordinance 33 § 14 because Defendants have only moved for summary judgment on the basis that Plaintiff Mr. Wiscovitch lacks standing to challenge the ordinance, and Defendants do not argue for summary judgment on the basis that the § 14 of Municipal Ordinance 33 is constitutional as a matter of law.

[12] Defendant Mayor Cruz disclaims her authority to enforce the fine issued under the Municipal Ordinance, stating "[g]iven that the injunctive relief requested by Plaintiff resides solely in Municipal Authority, Co-defendant Mayor Cruz, in her personal capacity is barred from providing any remedy." ECF No. 105 at 18. She thereby incorporates by reference the arguments raised by the Municipality of San Juan above. ECF No. 105 at 19.

appeal. ECF No. 155 at 2.[13] Because the Municipality will not enforce the fine, the threatened injury to Mr. Wiscovitch is no longer actual nor imminent. Mr. Wiscovitch therefore does not have standing to bring a First Amendment Commercial Speech claim because he will not have to pay the $5,000.

Even if the alleged harm were imminent, Plaintiff's request for injunctive relief is barred by mootness. Voluntary cessation of a challenged practice does not always deprive a federal court of the ability to adjudicate a practice because of mootness. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 at 289 (1982). This may be particularly true when a challenged law is no longer in effect, but the municipality has announced an intention to reenact the same ordinance which would cause the same harm to the plaintiff. City of Mesquite, 455 U.S. at 289; 289 n. 11. A defendant who claims that its voluntary cessation of the alleged harm moots a case bears the burden of showing that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2000).

The Municipality has met its burden. The Municipality both expressly declared that it will not enforce the 2017 fine against Mr. Wiscovitch and has stated that the ordinance under which Mr. Wiscovitch was fined is no longer in effect. ECF No. 145 at 15; ECF No. 155 at 2. Mr. Wiscovitch was only fined for a specific instance of conduct in 2017, and there is no risk that any newly enacted ordinance would once again punish him for that conduct. Therefore,

---

[13] The Municipality of San Juan did not precisely respond to the court's order, which ordered the Municipality to inform "whether, in accordance with its mootness argument, the Municipality is voluntarily desisting from enforcing the $5,000 fine assessed upon Mr. Wiscovitch under Section 14 of the Municipal Ordinance No. 33, Series 2016-2017, or whether it intends to enforce the fine if the administrative appeal upholds the imposition of the fine." ECF No. 153 at 2 (emphasis added). While the Municipality responded that it will no longer seek to "impose" a fine, the fine was already imposed on Mr. Wiscovitch, but he appealed and the fine has yet to be enforced or collected. ECF No. 106-3 at 101, ¶¶ 20–25; 103, ¶¶ 9–10; ECF No. 106-7 at ¶ 31. Therefore, the Municipality's response in its informative motion is construed to mean that the fine imposed on Mr. Wiscovitch will not be enforced or collected if the administrative appeal upholds the fine.

because it is clear that Mr. Wiscovitch will not have to pay the fine for violating § 14 of Municipal Ordinance 33, Series 2016-2017, and because that ordinance has expired, there is no risk that another fine will be brought against him for what he did in 2017.

In sum, Mr. Wiscovitch does not have standing to enjoin his payment of the $5,000 fine, because the Municipality has expressly disclaimed enforcing the fine against Mr. Wiscovitch, which renders his claim neither actual nor imminent. Furthermore, the expiration of the ordinance that Mr. Wiscovitch allegedly violated combined with the voluntary cessation by the Municipality in enforcing the fine against Mr. Wiscovitch renders his claim for injunctive relief moot. As such, summary judgment should be granted for Defendants with regard to Mr. Wiscovitch's First Amendment Commercial Speech claim.

### F.    Whether Plaintiffs Lack Standing to Recover on their Claim for Loss of Income Due to the Closing of Asiana Sushi Bar

In moving for summary judgment, the Municipality of San Juan argues that Plaintiffs, as shareholders, do not have standing to claim economic damages to Asiana Sushi, a separate legal entity. ECF No. 107 at 18–19. Plaintiffs respond that as shareholders they do have standing to sustain a suit for economic damages due to Defendants' conduct, because the "damages to Mr. Wiscovitch's reputation, mental health, and integrity" obligated Plaintiffs to close Asiana Sushi Bar, which, in turn, caused them economic loss as shareholders. ECF No. 135 at 23.

Because a corporation and its shareholders are "distinct juridical persons," "[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name . . . even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." Pagán, 448 F.3d at 28. This doctrine remains true even if a shareholder is the sole owner of the corporation's stock. Id. The First Circuit has expressly held that the requirement for standing applies "to actions brought to

redress injuries to a corporation under Section 1983." <u>Diva's Inc. v. City of Bangor</u>, 411 F.3d 30, 42 (1st Cir. 2005).

Plaintiffs have clearly argued that the damages they suffered resulted from a depreciation of Asiana's stock. In Plaintiffs' memorandum in opposition to the Municipality's motion for summary judgment, they assert that they were harmed when, as shareholders of Asiana Sushi Bar, they ceased to receive economic income in the form of dividends after its closing. ECF No. 135 at 23. Plaintiffs' standing to recover for this kind of harm is clearly foreclosed. Only Asiana Sushi Bar, as a separate legal entity, has standing to bring a claim for economic harm from its closing. Plaintiffs, as shareholders, do not have standing because their claim for economic damages is merely derivative of the harm to Asiana. <u>See</u> <u>Pagán</u>, 448 F.3d at 29. Likewise, as held in <u>Diva's Inc.</u>, even as Asiana Sushi Bar's sole shareholders, the Plaintiffs do not have standing to sustain a claim for economic damages resulting from the closure of Asiana Sushi Bar. Consequently, summary judgment should be entered for Defendants with regard to any claim for economic damages resulting from the closure of Asiana Sushi Bar.

## V.   PLAINTIFFS' CLAIMS UNDER PUERTO RICO LAW

In moving for summary judgment, Defendants also move to dismiss Plaintiffs' Puerto Rico constitutional and statutory claims, asserting that if Plaintiffs' federal causes of action fail, the Puerto Rico claims based on the same material facts must also fail. ECF No. 105 at 18; ECF No. 107 at 19–20. Defendant Mayor Cruz also argues that Plaintiffs have not presented any facts that could give rise to a claim under Article II, §§ 1, 8, 10,[14] or 16 of the Puerto Rico Constitution, or under Puerto Rico Civil Code § 1802.[15] ECF No. 107 at 19–25.

---

[14] <u>See</u> <u>supra</u> note 2.
[15] A new Civil Code of Puerto Rico became effective on November 28, 2020. Article 1802 is now Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5311. Even so, because the events at issue in this case occurred before the new Civil Code became effective, the applicable provisions are contained in the prior version of the Civil Code.

Article II, Section 1 of the Puerto Rico Constitution reads, "The dignity of the human being is inviolable." P.R. CONST. art. II, § 1. Article II, Section 8 provides, "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." P.R. CONST. art. II, § 8. Article I, Section 10 establishes, "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." P.R. CONST. art. II, § 10. Ultimately, under Puerto Rico Law, the application of these rights to particular factual situations is left to the "prudent discretion of the trial courts." Mojica Escobar v. Roca, 926 F. Supp. 30, 34 (D.P.R. 1996) (citing Colón v. Romero Barceló, 112 D.P.R. 573, 579 (P.R. 1982)) (internal quotation marks omitted).

Rights under the Puerto Rico Constitution may be enforced through an action for damages under § 1802 of the Puerto Rico Civil Code. See Colón, 112 D.P.R. at 579 ("Article 1802 . . . constitutes an all-embracing formula that governs the legality of all human acts or omissions in the civil area . . . ."). The standard for liability under § 1802 of Puerto Rico's Civil Code is wide-ranging. Section 1802 provides, "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. Tit. 31, § 5141. As remarked by this court in Clemente v. United States, 426 F. Supp. 1, 2 (D.P.R. 1977), "suffice it to say that [§ 1802] establishes what is probably the broadest basis for tort liability in any jurisdiction of the United States."

"Fault" under § 1802 could be "committed knowingly and willfully" or could simply be an act "willful or not, of a person which produces a wrong or damage." Reyes v. Heirs of Sanchez Soto, 98 D.P.R. 305, 310 (P.R. 1970). Hence, "the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong . . . ." Id. at 311–12. In light of this broad standard, the First Circuit has recognized that liability under § 1802 consists

36

of three elements: "(1) evidence of physical or emotional[16] injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." <u>Vázquez-Filippetti v. Banco Popular de Puerto Rico</u>, 504 F.3d 43, 49 (1st Cir. 2007) (emphasis added). In sum, liability under § 1802 of the Puerto Rico Civil Code can be understood to encompass <u>both</u> intentional and negligent torts causing emotional damage.

Foreseeability is the central issue in § 1802 actions under Puerto Rico law, because it is an element of both breach and proximate cause. <u>Vázquez-Filippetti</u>, 504 F.3d at 49. A plaintiff bears the burden of showing that the defendant or defendants acted in such a way that a reasonably prudent person would foresee as creating undue risk of emotional harm. <u>See</u> <u>id</u>. <u>Pacheco Pietri v. ELA</u>, 133 D.P.R. 907 (P.R. 1993) (Alonso, J., dissenting) ("[T]he negligent act is defined as a breach of the duty imposed or recognized by law, to act, as would a prudent and reasonable man, . . . in order not to expose to foreseeable and unreasonable risks of damages, as a result of the actor's behavior, those persons who . . . a prudent and reasonable man would have foreseen . . . would be exposed to the unreasonable risk created by the actor.") (internal citations omitted)).

The Puerto Rico Supreme Court has explicitly permitted suit to recover for emotional harm based on false arrest under Article II, §§ 1 and 8 through § 1802 of the Puerto Rico Civil Code. <u>Ayala v. San Juan Racing Corp.</u>, 112 D.P.R. 804, 813 (P.R. 1982). In <u>Ayala v. San Juan Racing Corp.</u>, the Puerto Rico Supreme Court declared, "A person, whether or not a law enforcement officer, may by himself or through another one unlawfully detain or cause the

---

[16] Recovery for pure emotional harm is also permitted under Puerto Rico Civil Code § 1802. <u>Jiménez-Nieves v. United States</u>, 618 F. Supp. 66, 69 (D.P.R. 1985) ("Under Article 1802, the right to claim damages in ex delicto actions, for humiliation and mental sufferings, independent of the existence of physical damages, has been long established in this jurisdiction.") (citing <u>Muriel v. Suazo</u>, 72 P.R.R. 348, 352 (1951)).

unlawful detention of another person. In both cases, said person would be liable for damages if said action is tortious or negligent." Id.

The Puerto Rico Supreme Court has held that a warrantless arrest may be reasonably made by a police officer if "(a) an offense has been committed in his presence; (b) the person arrested has committed a felony, although not in his presence; and, (c) he has reasonable grounds to believe that the person has committed a felony." Pueblo v. Martínez Torres, 120 D.P.R. 496, 523 (P.R. 1988) (citing 4 L.P.R.A. App. II, R. 11.). In determining whether there were "reasonable grounds" for the arrest, the officer must possess "information and knowledge that leads an ordinary and prudent person to believe that the person arrested has committed an offense, regardless of whether or not commission of an offense is later established." Pueblo, 120 D.P.R. at 523 (original emphasis omitted).

For the reasons discussed above, Plaintiffs' remaining Puerto Rico constitutional and statutory claims must survive because the same disputes of material fact also preclude summary judgment on the Puerto Rico law claims. Plaintiffs assert that Mr. Wiscovitch's arrest caused him to suffer public humiliation and resulted in emotional damages and mental anguish to Mr. Wiscovitch and his family members after he was "illegally arrested and mistreated in front of thousands of people." ECF No. 135 at 22.

There exist disputes of material fact as to whether Mr. Wiscovitch committed obstruction of justice in the presence of Mayor Cruz and the Municipal officers. These disputes of material fact preclude a finding on summary judgment that Mr. Wiscovitch's arrest was "lawful" under Puerto Rico law. Because there are disputes as to material fact of the lawfulness of Mr. Wiscovitch's arrest, a reasonable jury could find that Mayor Cruz and the Municipal police either through "fault or negligence" caused emotional harm to Mr. Wiscovitch and the other

Plaintiffs in this case—who are Mr. Wiscovitch's immediate family members. If Mr. Wiscovitch identified himself and was nevertheless arrested for obstruction of justice, a reasonable jury could find that Mayor Cruz and the Municipal Officers violated Mr. Wiscovitch's Puerto Rico constitutional rights held under Article II, § 1, 8, and 10 to either intentionally or negligently cause he and his family emotional harm. It is undisputed that at the time of the incident with Mr. Wiscovitch, thousands of people were in the streets for the Fiestas de San Sebastian. ECF No. 134-2 at 68, ¶¶ 7–9; ECF No. 134-5 at 51, ¶¶ 16–17; ECF No. 144 at 6, ¶ 38. A jury could find that Mayor Cruz and the officers were intending to humiliate Mr. Wiscovitch, or that unlawfully arresting him before so many onlookers produced an undue risk of emotional harm.

Defendants further claim that Plaintiffs failed to comply with the Puerto Rico jurisdictional requirement when they failed to notify the Mayor of the Municipality in writing within 90 days of the event. ECF No. 107 at 19–20; 21 L.P.R.A. § 4703. Defendants are incorrect. Puerto Rico's Municipal Notice Statute provides:

> No legal action of any kind shall be initiated against a municipality for damages due to negligence unless written notification is made in the form, manner and terms provided in this subtitle . . . . Said written notification shall be presented to the mayor within ninety (90) days of date on which the claimant learned of the damages claimed.

21 L.P.R.A. § 4703–4703(a). The First Circuit has recognized that under Puerto Rico law the municipal notice requirement is not jurisdictional in nature, but that it is nevertheless a condition that requires strict compliance. León v. Municipality of San Juan, 320 F.3d 69, 72 (1st Cir. 2003) (citing Méndez Pabón v. Méndez Martínez, 151 D.P.R. 853, 863 (P.R. 2000)) However, when the municipality has its "own means to know of the damage suffered by a claimant without outside notice, . . . the Puerto Rico Supreme Court has taught that the statutory notice is unnecessary." León, 320 F.3d at 73. In this case, the chief executive of the Municipality,

Mayor Cruz, had immediate personal knowledge of the events about which the Plaintiffs brought suit, so it was not necessary for Plaintiffs to notify Mayor Cruz <u>again</u> within 90 days. Plaintiffs are therefore not precluded from bringing their Puerto Rico Civil Code § 1802 claims by Puerto Rico's Municipal Notice Statute.

Finally, Plaintiffs also brought a claim under Article II, § 16 of the Puerto Rico Constitution. ECF No. 14 at 9, ¶ 50; ECF No. 135 at 22. Article II § 16 establishes the rights of employees, for example, the right to receive equal pay for equal work, the length of workday, and protections against risks to health and safety. P.R. CONST. art. II, § 16. Neither Mr. Wiscovitch nor any of the other named Plaintiffs have shown evidence that they are employees of the Municipality of San Juan, nor have Plaintiffs raised any evidence that relates whatsoever to violations of the rights of an employee. Because Section 16 of the Puerto Rico Constitution is completely inapposite to this case, summary judgment should be granted for Defendant's with regard to any cause of action based on § 16.

In sum, Mr. Wiscovitch's claims under the Article II, §§ 1, 8, and 10 of the Puerto Rico Constitution and all Plaintiffs' claims under § 1802 of the Puerto Rico Civil Code should survive Defendants' motions for summary judgment. However, any claims under Article II, § 16 of the Puerto Rico Constitution should be dismissed.

## VI.    CONCLUSION

Because there is no dispute as to material fact that Mayor Cruz and the officers of the Municipality had reasonable suspicion that Mr. Wiscovitch had violated at least one traffic ordinance, it is hereby recommended that the requests for summary judgment be GRANTED for all Defendants on Plaintiff Mr. Wiscovitch's claim for unlawful seizure under the Fourth Amendment for his initial stop. It is also recommended that Defendants' motions for summary

judgment be GRANTED on Mr. Wiscovitch's First Amendment claim for violation of his commercial speech rights, on Plaintiffs' shareholder claim to recover economic damages from the closure of Asiana Sushi Bar, and on any claims Plaintiffs have asserted under Article II, § 16 of the Puerto Rico Constitution.

It is hereby recommended that the Defendants' motions for summary judgment be DENIED with regards to Plaintiff Mr. Wiscovitch's First Amendment claim for retaliatory arrest, Fourth Amendment claim for unlawful arrest, and claims for violations of Article II, §§ 1, 8, and 10 of the Puerto Rico Constitution. It is also recommended that their requests for summary judgment be DENIED as to Plaintiffs' claims under § 1802 of the Puerto Rico Civil Code.

The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 28th day of January, 2022.

s/Marcos E. López
U.S. Magistrate Judge